UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 3:07-00124 |
| | ) | |
| ANTHONY LABRON DAVIS | ) | |

**MEMORANDUM**

Pending before the Court is a Motion for New Trial under Federal Rule of Criminal Procedure 33 filed by Defendant Anthony Labron Davis ("Davis") (Docket No. 233), to which the Government has responded in opposition (Docket No. 234).[1] For the following reasons, the Motion will be denied.

**I. BACKGROUND**

On July 11, 2007, Davis and four others were charged in a three-count Indictment returned by a federal grand jury. In Count One, all defendants were charged with conspiring to distribute and possessing with intent to distribute 5 or more kilograms of cocaine from "at least as early as July 2006 through October 26, 2006." (Docket No. 3 at 1). Count Two charged that Davis, "aided and abetted by others known and unknown to the Grand Jury," possessed with intent to distribute, and did distribute, 500 grams of cocaine. Count Three leveled a drug conspiracy charge against one of Davis' co-defendants.

Davis and co-defendant, Ruffino Tellez-Araujo ("Tellez"), who was charged in Count One, proceeded to trial. On July 31, 2008, the jury returned guilty verdicts against both defendants on

---

[1] Also pending is Davis' "Motion for Clarification" of this Court's April 4, 2012, Order that, once again, denied his repeated requests that the Government's response to his Motion for a New Trial be stricken. No clarification is needed as this Court's Order could not have been clearer: "MOTION DENIED." (Docket No. 243).

1

Count One, finding Davis responsible for distributing 500 or more grams of cocaine. The jury also found Davis guilty on Count Two.

At a joint sentencing hearing before Judge Echols on February 13, 2009, Tellez introduced into the record a signed letter that stated: "I would like to inform your court that I never met or conspired at any time or conversated [sic] about any drugs which the indictment filed stated with Mr. Davis." (Docket No. 233-5).[2] At the conclusion of the sentencing hearing, Davis was sentenced to concurrent terms of imprisonment of 120 months on each count, and Tellez was sentenced to 360 months imprisonment.

Davis and Tellez appealed. In affirming both the convictions and sentences, the Sixth Circuit succinctly summarized the relevant facts as follows:

> In 2003, as part of its investigation of a Nashville-based drug distribution conspiracy, Drug Enforcement Administration ("DEA") agents obtained a Title III court-authorized wiretap of the phone lines of Luis Mondragon–Bibiano, known as Chapparo, and Edgar Rayo–Navarro, known as Arturo. During the course of their investigation, DEA agents intercepted some 4,000 phone calls. While listening to these conversations, which were entirely in Spanish, DEA agents identified the voices of three speakers: Chapparo, Arturo, and a third speaker, referred to as El Negro. Based on information they obtained from the wiretapped calls, DEA agents intercepted over a million dollars in drug money, and 55 kilograms of cocaine.
>
> In October 2008[3] DEA agents arrested several members of the Tennessee drug conspiracy in the Middle District of Tennessee, including Chapparo, Arturo, and Defendant Tellez. Although Tellez was initially arrested for immigration violations, ten months after his arrest Chapparo and Arturo entered into plea deals with the government, and identified Tellez as El Negro. Tellez was subsequently indicted for drug conspiracy charges relating to the drug conspiracy.

---

[2] During questioning, Tellez admitted that "Mr. Davis wrote it. I just signed it. I read it and signed it." (Docket No. 233-6 at 2). Upon further questioning, however, Tellez claimed that the letter was "true and correct," and that he had never met Davis or given him any drugs prior to trial. (Id.)

[3] This date and the preceding date appear to be scrivener's errors. Both the wiretap and the arrests occurred in 2006, and the trial against Davis and Tellez was held in July 2008.

>       Defendant Davis was arrested based on three intercepted calls in which he was identified as a speaker, and information obtained from alleged co-conspirators. According to several alleged co-conspirators in the drug conspiracy, on a trip from Memphis, Tennessee to Nashville, Tennessee, Davis and Arturo were introduced to each other by alleged co-conspirator Kai Tyshawn Davis, Davis' nephew. After this meeting, Arturo agreed to provide Davis with cocaine for distribution in Memphis by Davis and alleged co-conspirator Allen Conner. Conner was subsequently arrested with a kilogram of cocaine, which he stated he received from Davis.

United States v. Davis, 407 Fed. Appx. 32, 34 (6th Cir. 2011) (footnote added). Further, in rejecting Davis' sufficiency of the evidence claim, the Sixth Circuit wrote:

>       Evidence demonstrating Davis' involvement in the drug conspiracy was presented at trial in two forms: through testimony of co-conspirators who had entered into plea agreements with the government, and through phone calls that the government had intercepted through its wiretap on Chapparo's and Arturo's phone lines.
>
>       Davis initially became involved with Chapparo and Arturo when Arturo asked Tyshawn, Davis' nephew, if he knew anyone outside of Nashville who might be interested in buying and distributing cocaine. Tyshawn responded that his uncle in Memphis, Davis, might be interested. Chapparo testified that he first met Davis on July 31, 2006 at a recreation center by a lake with Arturo and Tyshawn. Tyshawn, Allen Conner, and Davis arrived at the meeting in a blue SUV that authorities later determined was registered to Davis and his wife. At this meeting Arturo agreed to give Davis one kilogram of cocaine on credit, which Arturo directed Chapparo to provide. Later that day authorities intercepted a call in which Davis asked Chapparo when Davis would receive the kilogram of cocaine, and Chapparo promised to have it delivered later that day.
>
>       Conner testified that Davis received the kilogram of cocaine at a car wash in Nashville. Arturo testified that Tellez delivered the cocaine to Davis. Davis and Conner agreed that they would resell the kilogram of cocaine in Memphis, and split the profits. Conner was arrested in Memphis with the kilogram of cocaine. Davis met with Arturo and Chapparo a number of times to discuss payment after Davis failed to pay for the cocaine. Tyshawn also identified Davis' voice on several calls intercepted on Chapparo's phone.

Id. at 38-39.

## II. **LEGAL DISCUSSION**

Davis seeks a new trial based upon what he characterizes as "newly discovered" evidence. The Motion for a New Trial is not a model of clarity, and, as best as the Court can tell, Davis is generally asserting that Judge Echols improperly instructed the jury, and provided it with a verdict form that "restructured" the Indictment; the Government failed to disclose evidence in violation of Giglio v. United States, 405 U.S. 150 (1972), and committed prosecutorial misconduct by withholding information about a confidential informant; the letter Tellis submitted at the sentencing hearing points to Davis' innocence, and warrants a new trial; the evidence was insufficient to support his convictions; and counsel was ineffective in failing to raise some or all of these claims. None of the foregoing is "newly discovered evidence" within the meaning of Rule 33, and, in any event, Defendant is not entitled to a new trial based on any of the arguments he raises.

Generally, "[t]o prevail on a motion for a new trial based on newly discovered evidence, a defendant must show that the new evidence (1) was discovered after the trial, (2) could not have been discovered earlier with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce an acquittal." United States v. Hanna, 661 F.3d 271, 297 (6th Cir. 2011). "However, when the defendant asserts that the new evidence at issue is exculpatory evidence which the government failed to turn over in violation of Brady [v. Maryland, 373 U.S. 83 (1963)] he 'should not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal.'" United States v. Frost, 125 F.3d 346, 382 (6th Cir.1997) (citation omitted). "Rather, the defendant must show only that the favorable evidence at issue was 'material,' with 'materiality' defined according to opinions interpreting the Brady doctrine." Id.

Cases from the Sixth Circuit "firmly establish that if a defendant is aware of the evidence

4

at the time of trial, then it is not newly discovered evidence under Rule 33." United States v. Ricketts, 111 Fed.Appx. 812, 814 (6th Cir. 2004). This includes claims alleging ineffective assistance of counsel. See, United States v. Seago, 930 F.2d 482, 488-89 (6th Cir.1991) (holding that a claim of ineffective assistance of counsel is not "newly discovered" for purposes of a Rule 33 motion where the facts supporting the claim were within the defendant's knowledge at the time of trial); United States v. Munoz, 605 F.3d 359, 367 (6th Cir. 2010) ("ineffective-assistance claim based on 'newly discovered evidence'" is an "argument [that] is foreclosed in this circuit.").

Obviously, instructions and verdict forms provided to the jury, as well as any errors in relation thereto, are not newly discovered. See, Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Service Co., 206 F.3d 900, 913 (9th Cir. 2000) (stating in context of comparable civil rule: "The judge's instructions to the jury were of course not 'newly discovered evidence' years after the trial had concluded"). Regardless, Davis' contention that the instructions and verdict form "restructured" the Indictment by allowing the jury to convict him of possessing with intent to distribute 500 grams of cocaine when he was charged in Count One with intent to distribute 5 kilograms or more of cocaine does not entitled him to a new trial.

"When a jury attributes a lower drug quantity to a defendant than the quantity in the indictment, [the Sixth Circuit] treat[s] this change as a conviction based on a lesser-included offense, see Fed. R. Crim. P. 31(c), rather than a prejudicial variance or a constructive amendment to the indictment." United States v. Dunn, 269 Fed.Appx. 567, 575-76 (6th Cir. 2008) (collecting cases). A conviction on a lesser included offense is "perfectly appropriate under Federal Rule of Criminal Procedure 31," even where defendant does not request an instruction because that rule "advises defendants that they "may be found guilty of . . . an offense necessarily included in the offense

5

charged.'" Id. at 375 (quoting, Fed. R. Civ. P. 31(b)); see, Seymour v. Walker, 224 F.3d 542, 558 (6th Cir.2000) (a defendant need not consent to instructions on lesser included offenses "because the defendant has sufficient notice, when charged with the greater offense, that she may also have to defend against the lesser charge").

Likewise, the existence of a confidential informant is hardly "newly discovered evidence." Notwithstanding Davis' contention that he "first was aware" after reading the Presentence Report that Conner was lured to Memphis by an individual who, "unbeknownst" to him was a confidential informant who worked for the Federal Bureau of Investigation, (Docket No. 233 at 8), the Government's reliance on a confidential informant was disclosed in a Drug Enforcement Administration "Report of Investigation" that was provided to counsel before trial. (Docket No. 234-2). That informant's involvement in the events leading to Conner's arrest in Memphis while possessing a kilogram of cocaine was also the subject of testimony at trial, including testimony from Detective Derek Mills of the Shelby County Sheriff's Department who stated that "[w]e had some information from an informant that a male known as Allen Conner was going to be delivering 1 kilo of cocaine to another subject." (Docket No. 234-3 at 2). See, United States v. Pippin, 1997 WL 66527 at *3 (6th Cir. 1997) (counsel's "failure to investigate particular witnesses" is not "newly discovered" where defendant is aware of a witness at the time of trial).

In any event, Davis has not shown that he would have been entitled to the identity of the informant, or that further disclosures relating to the informant would likely have resulted in an acquittal. "The government has the privilege 'to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.'" United States v. Sales, 247 Fed.Appx. 730, 734 (6th Cir. 2007) (quoting, Roviaro v. United States,

6

353 U.S. 53, 59 (1957)). This privilege dissipates only where a defendant shows that the "need for disclosure of information in the preparation of a defense" outweighs "'the public interest in protecting the flow of information to the government.'" Id. "[M]ere conjecture or supposition about the possible relevancy of the informant's testimony," does not suffice, id., and, "[d]isclosure has usually been denied where the informant was not a participant, but a mere tipster or introducer." United States v. Dexta, 136 Fed.Appx. 895, 904-905 (6th Cir. 2005).

Davis does not show that disclosure of information surrounding the confidential informant was necessary for the preparation of his defense. The confidential informant's tip to law enforcement led to Conner's arrest, but Davis' fate was sealed when Conner turned on him, and when the jury heard intercepted phone calls between Davis and his co-conspirators, and the testimony of some of those co-conspirator's linking Davis to the conspiracy, including testimony from Davis' own nephew.

That said, "[i]n a criminal case the prosecution has a constitutional obligation to disclose to the defendant all exculpatory and impeachment evidence. Robinson v. Mills, 592 F.3d 730, 735 (6th Cir. 2010) (citing Strickler v. Greene, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). Here, Davis claims the Government was obligated to turn over information about the confidential informant under Giglio.

In Giglio, the Supreme Court held that evidence usable for impeachment purposes is considered exculpatory evidence for the purposes of Brady which holds that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment." Brady, 373 U.S. at 87. However, Davis does not show how information regarding the background of the confidential informant could have been

7

used to impeach anyone (the confidential informant did not testify at trial), nor does he show that any such information would be material to his guilt.

Tellez' letter is not "newly discovered evidence" in the sense that, whether Tellez knew Davis, or whether the two conspired, is something both would have known prior to the time that they found themselves sitting together at defendant's table. True, Tellez did not proffer the letter until the sentencing hearing, but the letter would not have been admissible at trial.

Tellez did not testify at trial and Davis could not have forced him to waive his Fifth Amendment right. See, United States v. Tisdale, 952 F.2d 934, 940 (6th Cir. 1992) ("It is well settled that the Sixth Amendment's guarantee of compulsory process does not overcome a witness' Fifth Amendment privilege against self-incrimination"). Moreover, even if the letter were somehow admissible, Tellez's denial of guilt was evident by the fact that he chose to go to trial, and, besides, Davis was charged with conspiring with others besides Tellez, for which the jury was presented with more than sufficient evidence to convict.

Davis' claim of insufficient evidence can in no way be viewed as newly discovered. Even if it could, the Sixth Circuit found the evidence sufficient to sustain Davis' conviction on both charges. See, Davis, 407 Fed. Appx. at 38-39 (reviewing the evidence and concluding, "[t]here is sufficient evidence to sustain both of Davis' convictions.").

Finally, in the body of the Motion for a New Trial, Davis requests the appointment of counsel pursuant to 18 U.S.C. § 3006A. That statute provides that an indigent defendant is entitled to be represented by counsel when required by the Sixth Amendment, or when a defendant "faces a loss of liberty in a case[.]" U.S.C. § 3006A(a)(1)(H)-(I)). While "[a] post-conviction, pre-appeal Rule 33 motion is considered part of a defendant's direct appeal, and the Sixth Amendment right to

counsel attaches, . . . a post-conviction, post-appeal Rule 33 motion is considered a collateral challenge to which the Sixth Amendment right to counsel does not attach." United States v. Berger, 375 F.3d 1223, 1226 (5th Cir. 2004); see, Johnson v. United States, 246 F.3d 655, 658 (6th Cir. 2001) (citation omitted) ("a delayed Rule 33 motion is usually not part of 'any critical process leading from trial to direct appeal'"). To the extent the Court retains discretion to appoint counsel for a delayed Rule 33 motion, see, Trenkler v. United States, 268 F.3d 16, 20 (1st Cir. 2001), the Court will not appoint counsel in this case because Davis has not presented even a modicum of "newly discovered evidence" which would entitle him to a new trial.

### III. CONCLUSION

On the basis of the foregoing, Davis' Motion for a New Trial, his request for the appointment of counsel, and his Motion for Clarification will be denied.

An appropriate Order will be entered.

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE